Good morning, Your Honor. Sharon Fleming for appellant. Mr. Pierce. All right. Thank you. Your Honor, there was abundant evidence in this case that Mr. Pierce has a mental illness for going back throughout his life and extending into the present time. The question is whether or not his mental illness was active and rendered him incompetent during the trial. As with many other people with such an affliction, his condition worsens and improves at various times in his life. During the trial in the instant case, there were numerous indications that his mental condition had deteriorated. And not the least of this was the incident in which he slashed his throat and had a seizure. There's two components to the argument that we presented to this Court, a procedural due process argument and a substantive due process argument. With regard to the procedural due process argument, it's the trial court's function to order sua sponsi, a competency hearing, where there is evidence which, assuming it's truth, raises a reasonable doubt concerning a defendant's competence. What if the trial court says it ain't true? Well, Your Honor, in this case, the trial court, I think, abdicated entirely to the report from Patton State Hospital. Oh, yeah, the Patton, and it's not too illogical that it would consider that report, where they said this guy, this guy's a wonderful actor and a wonderful malingerer. And by the way, when it came back from Patton after his, after the second case that we all talked about, they said the same thing. He's still playing games. He knows how to play games. And he fools you guys all the time. And so the Court takes that into consideration as he goes on with his gaming. What's wrong with that? Well, I think there's, for one thing, there was other evidence that the trial court had that Mr. Pierce was incompetent at other times. And I think it's also very, very important that the Patton report was prepared months, months prior to the time of the trial. And Mr. Pierce is not someone who never had any prior history of mental illness. Let's go back. We're back in ITSA again, right? And this is a case in which the California courts did a pretty careful job of looking at the evidence, and in fact did vacate the sentencing and sent back for another competency hearing as to sentencing. And in which, as I understand it, we don't have the complications that we were discussing in the earlier case with regard to arm of terror. So why don't we just look at what the California Court of Appeals did in its fairly careful opinion and say we might not reach the same result, but this is reasonable? Well, Your Honor, I think that particularly with regard to the substance of due process argument, whether or not Mr. Pierce was actually competent during his trial, putting aside the procedural argument, even if the trial court was reasonable in relying on this report from Patton, we have more than that in this case. We have an actual finding of incompetence by a trained psychiatric professional four days after the time of the conclusion of this trial. And we also have in the records when Mr. Pierce was subsequently committed to Patton. Now, admittedly, they came back again and said he can manifest maybe exaggerated symptoms at times. But that's the point, that when Patton has said that, it said it before and it says it after. Yes, some psychiatric professional who spends a little time with him says, yes, this guy really is incompetent. And as soon as they really get a handle on him, Patton says, it's the same old stuff all over again. This guy can fool the professionals. But actually, when he first went back to Patton, the doctor that examined him upon his first admittance to Patton, knowing of the prior Patton's earlier finding that he may exaggerate his symptoms or feign symptoms, even knowing that, still found that he was incompetent at that time. That's the difficulty with this case, though. I mean, the California courts know all of that and have all that information. And they say, taking everything into account, we think this guy is competent, too competent in a legal sense. Well, actually, Your Honor, I don't believe the California court had that last little bit of information before it, because we did not obtain that information until we were already in district court when I obtained his records from Vacaville Hospital, where he had subsequently been sent after his conviction was affirmed. In this case, we obtained those records from Patton, and it was at that time that we learned that he was initially found to be incompetent on his return to Patton, following the incompetency finding by Dr. Cohen. So that piece of, I think, important information actually was not before the State court, was not, did not come to light until after we were here in Federal court. But in any event, I think it's unreasonable that the court of appeal here found that the incompetency finding four days after conclusion of trial raised substantial and serious doubts about Mr. Pierce's competency between the conclusion of the trial and sentencing. And so they sent him back for resentencing. Now, during his trial, he was exhibiting all sorts of evidence of incompetence. He ---- What was the result of that retrial? Do we know that? Of the, of the, of the, after the remand with regard to the sentencing. What happened then? They held a new competency hearing. He was found competent at that time, re-found competent, and then once again sentenced to 25 years to life. But, but the ---- Isn't the substantive ground a weaker ground? Because every time, every time, ultimately, when his competency was determined, he was ultimately determined to be competent. Ultimately determined to be competent after being given medication, after being given therapy, maybe in a, in a therapeutic setting such as Patton State Hospital. But there's also in materials in the, before this court that were not before the state court, showing Mr. Pierce's subsequent psychiatric history since he's, his conviction was affirmed and he was sentenced to prison. And he spent a great deal of time in Vacaville. He's been forcibly medicated. I mean, he, this gentleman has a long-term history of mental illness. I don't think, I think it's indisputable that he is mentally ill. And there's also evidence here that he has a very low IQ, a 65. And yet, the state courts are trying to say that he's able to somehow fool all these different doctors. There's, I think, six, seven, maybe eight different doctors that examined him when he was in custody in Los Angeles at various times and found him incompetent to stand trial. Yes. Well, that's the problem. You're now assuming that a low, a, quote, low IQ means that a person can't be absolutely clever and sneaky. I expect that some people's, not to say he's this, some people's animals have very low human IQs. And anybody who has one knows just how clever and sneaky they can be. Well, I think. When he gets out, he commits another crime and he's back in. And they, and what Patton keeps saying is if you get this guy, if you get him out of a particular situation where he's trying to accomplish some result and you put him in our Patton thing and we watch him for a while, we find out he's just awfully clever. Well, he's so awfully clever that he's repeatedly attempted to commit suicide since his conviction was affirmed in this case. He's been forcibly medicated. He has a clear. The thing in Gigi where somebody says, did you know that Mr. So-and-so committed suicide yesterday? And the person says, oh, yes. How? And they say the usual way with insufficient amount of drugs. Well, Your Honor, I think that the problem here is that Mr. Pierce at various times is more or less acutely mentally ill. I don't, no one has ever disputed, even the Patton reports don't undermine the fact that he has a mental illness. And I think the important thing is how active is his mental illness at any given time. And in this case, not only is there evidence that he was actively mentally ill during the trial, but most importantly, the doctor that examined him at the time or almost immediately concurrent with the time of the trial found that he was incompetent. He's not, some people that are mentally ill are not constantly mentally ill all the time. Usually not. They receive medication. Things happen. They improve. And they worsen. I did LPS for a number of years. I've seen that happen. People don't stay actively, acutely mentally ill. But here we have a gentleman that under some circumstances obviously decompensates and particularly during the stress of this trial, obviously decompensated. And he was actively mentally ill during the trial. He was found to be mentally ill by a doctor. The California Court of Appeal says that this finding of incompetency raised substantial and serious doubts about his competency. Because the trial court was not aware of it. The trial court was aware of the things that happened before, but it wasn't aware of this very mysterious and odd fact that the guy was in prison under two different names apparently at the same time and was charged under a different name and was something that happened while he was in prison for this crime and therefore the information never got to the trial court. So that's really a procedural problem essentially, which is something that the trial court didn't know about. If I may respond, I'm just about out of time. But I think that the trial court was subsequently made aware of it once his attorney discovered it and brought a petition for rid of Eric Korenobis into the trial court. And at that point, the trial court was presented with this evidence. And nevertheless, once again relying on the patent report, refused to vacate the conviction and hold the new trial. So I think this is to me an absolute violation of Mr. Pierce's right to due process of law. There's no conflicting evidence that's concurrent with the time of the trial to show that he was competent. And I believe that his conviction should be reversed. Thank you. Thank you. May it please the Court, Deputy Attorney General Ana Duarte for Respondent. I'd like to once again reiterate that the California Court of Appeals opinion or decision in this case was not objectively unreasonable. When you look at what the California Court of Appeals had before it, and at first I'd like to note that I did in my supplemental excerpts of record include at 146 to 209 certain psychiatric records that were never before the State courts. And I did that because they were provided to the district courts. But clearly, the California courts did not have those that did not rely on them to reach their decisions. So they really aren't properly or Petitioner nor I could properly rely on them now. But in any event, as to the first question about whether the trial court abused its discretion in not ordering a second competency hearing, we have to look at what was before the court at that time. And that was, number one, it had the penalty. This is what I find difficult. The only point about the California Court of Appeals decision that I find mysterious or strange is this. They found that the trial was concluded on January 26th, I believe. And the incompetency determination was on January 30th. The sentencing was on February 17th. But for some reason, they found the January 30th determination, which was four days after the end of the trial, sufficient to vacate the sentencing when the trial court was unaware of it at the time of sentencing, but not to vacate the company's determination regarding the trial. But it was actually closer in time to the trial than it was to the sentencing. And what's the explanation for that? Well, Your Honor, the Court of Appeal, the California Court of Appeal, explained why it was doing that. And it said the trial court had the opportunity to observe Petitioner during the trial. Sure, he was excluded from the proceedings, but the court was not. It doesn't have the opportunity to observe him during the sentencing. Well, then that's why the court resented back for determination as to his competency to be sentenced. Well, what I'm saying is they had the opportunity to observe it during the sentencing as well. But nonetheless, the California Court of Appeals regarded a fact that the trial court didn't know as pertinent to – but which was closer in time to the trial than to the sentencing, but not to the trial. That's part of the problem. Well, frankly, Your Honor, I had a problem, too, because I handled this case on direct appeal, and I argued that there should have been no question but that Petitioner was, in fact, competent at sentencing as well, based on the same facts. But I'm not – besides the fact that the California Court of Appeal explained that the court did not observe Petitioner from the 26th of January to the date of the sentencing, I can't say with regard to the trial court's initial decision in finding that Petitioner was not exhibiting symptoms of incompetence, was that it did rely on Patton State Hospital's report of September 16th. But the court also was relying on its own observations, and it stated that on the record the court also – Well, his observations had to have been that the guy was acting pretty bizarre during the trial because of his behavior, including flashing his throat or cutting his throat or something, and he wasn't, in fact, even there for most of the trial because of his behavior. So unless you believe the earlier representation that he was malingering, one wouldn't take the determination that he was by during the trial very seriously. Well, Your Honor, I think that it was fair for the trial court to consider that report. There was nothing else that he was on. No, I understand that, but I'm saying I don't know what about the observation during the trial that would have substantiated that. Well, I think that they were consistent with the report's statement that he – his conduct was volitional and that if he exhibited symptoms of incompetence, it was voluntary and it was because he wanted to avoid the judicial process. I don't think that the trial court can be faulted for that. In addition, the court later stated that its decision not to hold that second competency hearing had been made based on its observations, the report, and also the fact that defense counsel never brought up the issue. And the court was aware that defense counsel on December 8th, 1997, just a few short weeks before the trial commenced, had asked – Just a few short weeks. It was four months ago. No, no. No, I'm talking about December 8th, 1997. Oh, December. I'm sorry. Okay. So four weeks, five weeks, let's say, before trial began in this case, defense counsel requested and there were two psychiatrists appointed to examine Petitioner. I think that the only reasonable inference from that that can be reached is that these two psychiatrists did not have any evidence regarding his mental competence that would be favorable to Petitioner or else it would have been presented. At the sentencing hearing, his defense counsel said, I want to inform the court I have not been unmindful of my client's mental state. I have made efforts to inquire into it. And that included the fact that he asked for these two psychiatrists. I can't imagine that he would not have submitted the reports if they were favorable to him due to inadvertence when he's saying I was actively pursuing that. As to the substantive due process part of Petitioner's claim here, what was before the California court of appeal were a patent state hospital dated August 1998 and then two subsequent one or two-page letters from Dr. Sharma and Edelman regarding Petitioner's mental competence. Nothing else, well, that in addition to what was before the trial court originally was before the California court of appeal. So taking all of that into consideration, in addition with the fact that there is a presumption of competence and that this Court must, I think, presume the State Court's determination is correct unless it's rebutted by clear and convincing evidence, I just don't see that Petitioner has met that burden here. So ultimately when it went back to the trial judge, he looked at Sharma's and Edelman's reports and he also looked at Markman and decided he was competent then, right? Well, yes, after the court of appeals decision, yes. Yes. So I think that based on this record, clearly the district court's judgment should be affirmed as the California court of appeals decision under the AADPA was not objectively unreasonable. And unless the Court has any questions, I submit. Thank you. Thank you. I believe I'm up. All right. Thank you. We'll take a ten minute recess.
judges: Pregerson, Fernandez, Berzon